# 23-128

In The
𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔉𝔬𝔯 𝔗𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

Sherise Richardson,
*Plaintiff-Appellant,*
v.
Edgewell Personal Care, LLC,
*Defendant-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No. 21-cv-8275; HON. PHILIP M. HALPERN

## PLAINTIFF-APPELLANT SHERISE RICHARDSON'S OPENING BRIEF

Glenn A. Danas (270317)
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel. (213) 788-4050
Fax. (213) 788-4070

Neal J. Deckant (322946)
Brittany S. Scott (327132)
BURSOR & FISHER, P.A.
1990 N. California Blvd., Ste. 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

Timothy J. Peter (306965)
FARUQI & FARUQI, LLP
1617 JFK Blvd., Ste. 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Fax: (215) 277-5771

*Attorneys for Plaintiff-Appellant Sherise Richardson*

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Sherise Richardson states, by and through her counsel, that she is a natural person and has no corporate interests to disclose.

Dated: April 24, 2023   By: */s/ Glenn A Danas*

       Glenn A. Danas
       gdanas@clarksonlawfirm.com
       **Clarkson Law Firm, P.C.**
       22525 Pacific Coast Highway
       Malibu, CA 90265
       Tel: (213) 788-4050
       Fax: (213) 788-4070

       Neal J. Deckant
       ndeckant@bursor.com
       Brittany S. Scott
       bscott@bursor.com
       **BURSOR & FISHER, P.A.**
       1990 North California Blvd., Suite 940
       Walnut Creek, CA 94596
       Tel: (925) 300-4455
       Fax: (925) 407-2700

       Timothy J. Peter
       tpeter@faruqilaw.com
       **FARUQI & FARUQI, LLP**
       1617 JFK Boulevard, Ste. 1550
       Philadelphia, PA 19103
       Tel: (215) 277-5770
       Fax: (215) 277-5771

       *Attorneys for Plaintiff-Appellant Sherise Richardson*

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................1

ISSUES PRESENTED............................................................4

STATEMENT OF JURISDICTION ...............................................4

STATEMENT OF THE CASE ....................................................5

    A.   "Reef Friendly" Sunscreen Is A Highly Sought-After Product .................................................................5

    B.   Edgewell Labels Its Products "Reef Friendly," Despite Containing Reef-Damaging Ingredients................................7

    C.   Procedural History ...............................................10

STANDARD OF REVIEW......................................................12

SUMMARY OF THE ARGUMENT .............................................12

ARGUMENT...................................................................15

    I.    The District Court Erred By Dismissing Plaintiff's Claims Under The GBL §§ 349 And 350 On A Pleadings Challenge ...................15

       A.   The District Court Erred By Holding As A Matter Of Law That Edgewell's "Reef Friendly" Label Is Unlikely To Deceive The Reasonable Consumer...............................15

          1.   Plaintiff Plausibly Alleged that the Products' "Reef Friendly" Label is Likely to Mislead Reasonable Consumers ...............................................18

          2.   "Greenwashing" Practices Demonstrate The Materiality Of Environmental Claims To Reasonable Consumers ...............................22

          3.   Even If The "Reef Friendly" Label Were Ambiguous, The District Court Should Not Have Decided Its Meaning As A Matter Of Law..................25

B.     The Back Label Of The Product Does Not Cure The Deception Presented On The Product's Front "Reef Friendly" Packaging ............................................................ 30

II.     The District Court Erred By Dismissing Plaintiff's Claim For Breach Of Warranty ........................................................... 36

A.     The "Reef Friendly" Representation Is Neither A Generalized Nor A Vague Statement ................................... 39

B.     The Products' Back Label Does Not Conform To The Warranty Created By Edgewell's "Reef Friendly" Front Label ................................................................................... 39

CONCLUSION ...................................................................................... 40

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ass'n of Nat. Advertisers, Inc. v. Lungren,*
  44 F.3d 726 (9th Cir. 1994)..............................................................22

*Ault v. J.M. Smucker Co.,*
  No. 13-cv-3409,
  2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) .............. 14, 37, 38, 39

*Baretto v. Westbrae Nat., Inc.,*
  518 F. Supp. 3d 795 (S.D.N.Y. 2021) ..............................................38

*Bautista v. CytoSport, Inc.,*
  223 F. Supp. 3d 182 (S.D.N.Y. 2016) ................................................8

*Bell v. Publix Super Markets, Inc.,*
  982 F.3d 468 (7th Cir. 2020)..................................................2, 16, 26

*Brady v. Bayer Corp.,*
  26 Cal.App.5th 1156 (2018)............................................................17

*Budani v. Monster Energy Co.,*
  527 F. Supp. 3d 667 (S.D.N.Y. 2021) ..............................................17

*Bynum v. Fam. Dollar Stores, Inc.,*
  592 F. Supp. 3d 304 (S.D.N.Y. 2022) ..............................................11

*Chufen Chen v. Dunkin' Brands, Inc.,*
  954 F.3d 492 (2d Cir. 2020)............................................................18

*Cooper v. Anheuser-Busch,*
  553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...........................................25, 37

*Danone, US, LLC v. Chobani, LLC,*
  362 F. Supp. 3d 109 (S.D.N.Y. 2019) ..............................................16

iv

*Dumont v. Reily Foods Co.*,
    934 F.3d 35 (1st Cir. 2019) ............................................................25

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).................................................... 15, 18

*Garadi v. Mars Wrigley Confectionary US, LLC*,
    No. 21-CV-2309,
    No. 21-CV-1996,
    2021 U.S. Dist. LEXIS 128814 (E.D.N.Y. July 6, 2021) ..........................32, 33

*Gonzalez v. Costco Wholesale Corp.*,
    No. 16-CV-2590 (NGG) (JO),
    2018 U.S. Dist. LEXIS 171000 (E.D.N.Y. Sept. 29, 2018), ................. 35, 36, 40

*Grain Traders, Inc. v. Citibank, N.A.*,
    160 F.3d 97 (2d Cir. 1998)...............................................................12

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020) ............................................2

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413 (RRM)(RLM),
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ..........................17

*Johnson & Johnson v. Smithkline Beecham Corp.*,
    960 F.2d 294 (2d Cir. 1992).............................................................30

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK),
    2016 U.S. Dist. LEXIS 109097 (S.DN.Y. Aug. 11, 2016)..............................28

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017).........................................................12

*Kwikset v. Sup. Ct.*,
    51 Cal.4th 310 (2011) ....................................................................24

*Locklin v. StriVectin Operating Co.,*
No. 21-cv-07967-VC,
2022 U.S. Dist. LEXIS 52461 (N.D. Cal. Mar. 23, 2022) ........................*passim*

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018).....................................................................*passim*

*Maurizio v. Goldsmith,*
230 F.3d 518 (2d Cir. 2000)............................................................................18

*Moran v. Bondi Sands (USA) Inc.,*
No. 21-cv-07961-JSW,
2022 U.S. Dist. LEXIS 79591 (N.D. Cal. Apr. 29, 2022).......................*passim*

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
No. 18-CV-2250,
2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 16, 2019)..............................32

*Rivera v. S.C. Johnson & Son, Inc.,*
No. 20-CV-3588 (RA),
2021 U.S. Dist. LEXIS 813759 (S.D.N.Y. Sept. 24, 2021) ............................28

*Singleton v. Fifth Generation, Inc.*,
No. 5:15-CV-474 (BKS/TWD),
2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016) ...............................37

*Stoltz v. Fage Dairy Processing Indus., S.A.,*
No. 14-CV-3826 (MKB),
2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) .......................17, 28

*Stoner v. Santa Clara Cty. Off. of Educ.*,
502 F.3d 1116 (9th Cir. 2007).......................................................................12

*Troncoso v. TGI Friday's, Inc.,*
No. 19-CV-2735 (KPF),
2020 U.S. Dist. LEXIS 100695 (S.D.N.Y. June 8, 2020) ..........................32, 33

*Turk v. Rubbermaid Inc.,*
No. 21-CV-270,
2022 U.S. Dist. LEXIS 50230 (S.D.N.Y. Mar. 21, 2022)....................31, 32, 33

*Videtto v. Kellogg USA,*
  No. 2:08-cv-01324-MCE-DAD,
  2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009) ..............................17

*Werbel v. Pepsico, Inc.,*
  No. 4:09-cv-04456-SBA,
  2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ...............................17

*White v. The Kroger Co.,*
  No. 21-cv-08004-RS,
  2022 Dist. LEXIS 54273 (N.D. Cal. Mar. 25, 2022). .............................*passim*

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...............................................................2, 14, 31

**Statutes**

28 U.S.C. § 1291 .........................................................................................4

New York GBL § 349 ...........................................................................*passim*

New York GBL § 350 ...........................................................................*passim*

New York Uniform Commercial Code Law § 2-313(1)(a) ...................................38

**Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................................4, 12

**Other Authorities**

16 C.F.R. 260.4 ......................................................................................20, 29

1A *Callmann on Unfair Competition, Trademarks and Monopolies*
  (4th ed. 2004), § 5:17 ................................................................................16

*Eco-Friendly*, Merriam-Webster,
  https://www.merriam-webster.com/dictionary/eco-friendly (last
  accessed April 24, 2023) ............................................................................29

*Friendly*, Merriam-Webster*,*
    https://www.merriam-webster.com/dictionary/friendly (last accessed
    April 24, 2023) ................................................................................... 29

Miriam A. Cherry, *The Law and Economics of Corporate Social
    Responsibility and Greenwashing*, 14 U.C. Davis Bus. L.J. 281,
    282-288 (2014) ................................................................................... 22

**INTRODUCTION**

Edgewell Personal Care, LLC ("Edgewell") markets its sunscreen and suncare Products as "Reef Friendly" despite containing avobenzone, homosalate, octisalate, and octocrylene (collectively, "Reef-Damaging Ingredients")—chemicals that are well documented as hazardous to coral reefs and the marine life that inhabit them. This packaging misleads reasonable consumers into believing that the "Reef Friendly" Products do not contain ingredients that are harmful to the environment. Despite the absence specifically of oxybenzone and octinoxate in the Products, Plaintiff alleged that the "Reef Friendly" label is misleading because a reasonable consumer would interpret that to mean the Products are free of *any* Reef-Damaging Ingredients.

Plaintiff's claims, which are based on New York's consumer protection statutes, depend upon whether a reasonable consumer would find the at-issue representations to be false or misleading. In *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638–39 (2d Cir. 2018), this Court held that it is often improper to dismiss claims like these on a pleadings challenge. This is because assessing consumer confusion is intensely fact-sensitive, so in cases like this, "what matters is how consumers *actually behave*—how they perceive advertising and make decisions. These are matters of fact, subject to proof at trial, even if as judges we may be tempted to

1

debate and speculate further about them." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020) (emphasis added).

The district court's order dismissing Plaintiff's claims with prejudice was erroneous and should be reversed for three main reasons. First, the district court improperly decided that Edgewell's marketing of the Products as "Reef Friendly" is "not misleading" to a reasonable consumer as a matter of law, improperly placing this case among the "rare" instances in which dismissal on a pleadings challenge is appropriate. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). The district court's conclusion was based on its view that "Reef Friendly" is an ambiguous statement. This was incorrect. Plaintiff's allegations demonstrate that environmental claims, such as "Reef Friendly" as used in Edgewell's Products, reasonably imply that a product will not be harmful to the environment, not simply that certain esoteric ingredients are omitted while *other* environment-degrading ingredients *are* included. Given that Plaintiff's common-sense definition is supported by dictionary definitions and Federal Trade Commission ("FTC") guides and common sense, it was erroneous for the district court to impose an unnatural and restricted meaning to the "Reef Friendly" label.

Second, the district court erred by concluding that the qualifying language on the back label of the Products cured the misleading nature of the front-label, bold-

font "Reef Friendly" representation. In determining that the "*No Oxybenzone or Octinoxate" language on the back label of the Products defeated any deception, the district court's decision is inconsistent with this Court's prior holdings that reasonable consumers are not required to rely on a product's back label that contradicts the front packaging. Moreover, the district court's narrow definition of "Reef Friendly" to only mean that Edgewell's Products are free from two particular chemicals that are harmful to coral reefs (when there are other Reef-Damaging Ingredients found within the Products), was a merits issue inappropriate for decision on a motion to dismiss.

Third, the district court erroneously dismissed Plaintiff's breach of express warranty claim. The district court's improper conclusions surrounding the reasonable consumer standard led it similarly to conclude that Edgewell's "Reef Friendly" label did not amount to a warranty. Contrary to the district court's holding, the "Reef Friendly" label is not a generalized or vague statement, nor is it cured by the qualifying language on the back of the Products. Therefore, Plaintiff's breach of warranty claim should not have been dismissed either.

The district court's order dismissing Plaintiff's claims with prejudice under the New York GBL §§ 349, 350, and breach of express warranty, was erroneous and should now be reversed.

## ISSUES PRESENTED

The questions presented are:

(1) Whether the district court erred by finding this is one of the "rare" cases in which the reasonable consumer standard should be decided as a matter of law on a motion to dismiss;

(2) Whether the district court ran afoul of this Court's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) by holding that the misleading nature of Edgewell's front-label, bold font statement of "Reef Friendly" was fully neutralized by the rear-label fine print qualification that the Products do not contain Oxybenzone or Octinoxate, despite the Products containing other Reef-Damaging Ingredients; and

(3) Whether the district court erred by holding that the "Reef Friendly" label does not amount to a warranty where other federal district courts have held that an identical label is sufficient to mislead reasonable consumers to believe the Products contain no Reef-Damaging Ingredients, thereby also stating a claim for breach of warranty.

## STATEMENT OF JURISDICTION

On January 30, 2023, the district court granted Edgewell's motion to dismiss Plaintiff's First Amended Complaint (FAC) with prejudice, pursuant to Federal Rule

of Civil Procedure 12(b)(6). A118; A120. On January 31, 2023, Plaintiff timely filed with this Court a notice of appeal pursuant 28 U.S.C. § 1291. A122–123. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### A.   "Reef Friendly" Sunscreen Is A Highly Sought-After Product

Reefs are some of the most diverse ecosystems in the world, protecting coastlines from storms and erosion, providing jobs for local communities, and offering opportunities for recreation. A22–23, ¶¶ 11–12. Over half a billion people depend on reefs for food, income, and protection. A22–23, ¶ 12. Despite their ecological and cultural importance, reefs are disappearing at alarming rates due to the impact of pollution and coral bleaching. A22–23, ¶¶ 12–13.

Coral reefs ecosystems are highly threatened by pollution. A23, ¶ 13. When faced with oxidative stress from pollutants such as avobenzone, homosalate, octisalate, and octocrylene, coral expel algae from their surface, turning them white (also known as "bleaching"). A23, ¶ 13; A26, ¶ 19. These Reef-Damaging Ingredients are chemicals that are well documented as harmful to reefs and the marine life that inhabit and depend on them. A26, ¶ 19. Commonly found in sunscreens, the chemicals lead to this "bleaching" of coral reefs, often resulting in their damage and demise, when washed into coral reef, even at extremely low concentrations. A24, ¶ 15.

As a result, many environmental organizations have cautioned consumers against using products containing Reef-Damaging Ingredients that impact natural environmental habitats. A29–32, ¶¶ 24–31. Indeed, the Haereticus Environmental Laboratory, the National Ocean Service, EWG, and Koahala Center have all reported on the negative environmental effects of sunscreens containing Reef-Damaging Ingredients. A9–30, ¶¶ 24–25; A32, ¶¶ 30–31. In fact, the U.S. Virgin Islands, Republic of the Marshall Islands, Palau, Bonaire, and the nature reserve areas in Mexico have banned some of these Reef-Damaging Ingredients or otherwise approved legislation for similar bans. A31, ¶ 29. In 2018, the Hawaiian Legislature banned oxybenzone and octinoxate from being included as ingredients in sunscreens, amending the bill in 2021 to add avobenzone and octocrylene starting in 2023. A31, ¶ 28. It is no surprise that the Hawaii Center for Biological Diversity and other researchers have petitioned the FDA for a national ban on the use of chemicals like octocrylene and avobenzone in sunscreens. A30, ¶¶ 26–27.

Consequently, consumers have become increasingly concerned with purchasing reef-friendly sun care and sun protection products, which are free from Reef-Damaging Ingredients that harm coral reefs and marine life that inhabits and depends on them. A25, ¶ 17. As a result, "reef-friendly," "reef safe," "reef conscious," and similarly claimed sunscreens and sun blocks have rapidly increased

6

in popularity due to their perceived positive ecological impact.  A25, ¶ 17; A32–033, ¶ 32.

**B.      Edgewell Labels Its Products "Reef Friendly" Despite Containing Reef-Damaging Ingredients**

Edgewell Personal Care, LLC ("Edgewell") is a multi-billion-dollar company and a highly visible competitor in the global sunscreen market.  A21–22, ¶ 10.  Through the labeling and advertising of certain of its Hawaiian Tropic® brand sun care Products (the "Products") as "Reef Friendly," Edgewell has reaped millions of dollars through a fraudulent and deliberate business decision to put profits over people and the environment.  A9–17, ¶ 2.

As Plaintiff alleged in her FAC, Edgewell labels and advertises its "Reef Friendly" sun care Products to imply that they only contain ingredients that are reef-friendly and otherwise cannot harm reefs when, in fact, the "Reef Friendly" Products contain Reef-Damaging Ingredients.  A9–17, ¶ 2.  The Products' "Reef Friendly" name and packaging misled Plaintiff, and tend to deceive other reasonable consumers, into believing the Products will not otherwise harm reefs, including the coral reefs and marine life that inhabit or depend on them.  A9–17, ¶ 2.  Further, Plaintiff alleged that Edgewell sought to take advantage of consumers' desire for sun care products that are friendly to or safe for reefs, while reaping the financial benefits of using harmful and less costly ingredients, thereby maintaining an unfair competitive advantage over its lawfully acting competitors.  A18, ¶ 3.

Plaintiff is a consumer who purchased Edgewell's Hawaiian Tropic® Silk Hydration Weightless SPF 30 (the "Purchased Product") at a retail store in New York. A20–21, ¶ 9. Plaintiff purchased Edgewell's Silk Hydration Weightless SPF 30 reasonably believing that its ingredients were all reef-friendly and otherwise could not harm reefs, including coral reefs and the marine life that inhabit and depend on them. A20–21, ¶ 9. The photographs on the outside of the Purchased Product's packaging shows the prominent "Reef Friendly" label claim:[1]

_____

[1] As the district court properly found, Plaintiff sufficiently alleged standing for the 20 additional Products sold under the Hawaiian Tropic® brand, which are substantially similar to the Purchased Product. A39–40, ¶ 45; A110–111 ("Given that each of the unpurchased products is also a sunscreen carrying the 'Reef Friendly*' representation, the unpurchased products are "sufficiently similar" to the Purchased Product.") (citing *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016) (citations omitted)).



Edgewell prominently labels the Products as "Reef Friendly" even though the Products contain various combinations of avobenzone, homosalate, octisalate, and octocrylene, all of which cause reef bleaching.  A9–17, ¶ 2.  For example, the Purchased Product contains 2% avobenzone, 5.5% homosalate, 4.5% octisalate, and 4% octocrylene despite its "Reef Friendly" label.  A33–36, ¶ 36 (citing A81–82).

Edgewell's labeling and marketing of the Products as "Reef Friendly" allow it to gain an unfair competitive advantage against its competitors that lawfully sell competing sunscreens and sun care products.  Indeed, true "reef-friendly" sun care products do not contain any ingredients, like the Reef-Damaging Ingredients in the Products, that can harm reefs, including coral reefs and the marine life that inhabits

and depends on them. A36–37, ¶ 37. Many environmental organizations have favored mineral-based sunscreens that use ingredients like zinc oxide and titanium dioxide, instead of the Reef-Damaging Ingredients, because they have been found to be safe for people, the environment, and aquatic life, like reefs. A36–37, ¶ 37. Manufacturers like Edgewell that "greenwash" their Products by labeling them as environmentally or eco-friendly charge consumers a premium for reef-friendly products without delivering the promised environmental safety for which its customers pay extra. A36–37, ¶ 37.

### C.    Procedural History

Plaintiff filed her initial complaint on October 7, 2021 against Edgewell in the Southern District of New York asserting three causes of action: (1) violation of the New York Unfair Competition Law, Business Law § 349; (2) violation of the New York False Advertising Law, Business Law § 350; and (3) Breach of Warranty. Plaintiff filed her FAC on February 3, 2022.

On June 7, 2022, Edgewell moved to dismiss Plaintiff's FAC, arguing that Plaintiff failed to plausibly allege that the "Reef Friendly" label was false or misleading, that Plaintiff did not have standing under Article III of the Constitution, and that Plaintiff's claims were barred by the primary jurisdiction doctrine. Dkt. 31. Plaintiff opposed the motion, Dkt. 32, and Edgewell filed a reply. Dkt. 33.

The Hon. Philip M. Halpern of the Southern District of New York granted Edgewell's motion to dismiss without leave to amend. A118; A120. The district court first concluded that Plaintiff had adequately alleged injury-in-fact for purposes of Article III standing and had sufficiently pleaded standing as to the unpurchased, substantially similar Products. A109–111. Although the district court found that Plaintiff had sufficiently pleaded an injury in connection with her claims alleging violations of GBL §§ 349 and 350, it rejected Plaintiff's allegations that the "Reef Friendly" product name was misleading, reasoning that "the 'Reef Friendly*' representation is not misleading but is instead ambiguous because it 'is susceptible to multiple interpretations.'" A115 (citing *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022)).

The district court also rejected Plaintiff's argument that Edgewell's "Reef Friendly" label creates an express warranty. A117–118. The court explained that the "Reef Friendly" label, standing alone, was "far too vague to create an affirmation of fact or promise required for an express warranty." A118. Further, the court noted that the "Reef Friendly" label as clarified by the "No Oxybenzone or Octinoxate" language on the Products' back label created a warranty that was not breached as Plaintiff does not allege that the Products contain Oxybenzone or Octinoxate. A118.

The district court's conclusions on whether the "Reef Friendly" label was materially misleading and whether it creates an express warranty that was breached

led it to grant Edgewell's motion to dismiss Plaintiff's FAC with prejudice.  A118;

A120.  The court thus did not address Edgewell's argument that Plaintiff's claims

are barred by the doctrine of primary jurisdiction.  A118, n.5.

After the district court entered judgment, Plaintiff timely filed her notice of

appeal.  A121–122.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's judgment granting a 12(b)(6)

motion for failure to state a claim upon which relief can be granted.  *Kwan v.*

*SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  In doing so, "[a]ll allegations

of material fact in the complaint are taken as true and construed in the light most

favorable to the plaintiff."  *Stoner v. Santa Clara Cty. Off. of Educ.*, 502 F.3d 1116,

1120 (9th Cir. 2007) (internal citations and quotation marks omitted).  "Dismissal of

the complaint is appropriate only if it appears beyond doubt that the plaintiff can

prove no set of facts in support of the claim which would entitle him to relief."  *Id.*

## SUMMARY OF THE ARGUMENT

The representations on Edgwell's "Reef Friendly" packaging tend to deceive

reasonable consumers into believing that the "Reef Friendly" Products do not

contain ingredients that are known to damage coral reefs and the marine life that

inhabit them.  The district court's order dismissing Plaintiff's claims with prejudice

is erroneous and should be reversed for three main reasons.

*First*, the district court erred in concluding as a matter of law that Edgewell's 'Reef Friendly' label would not lead a reasonable consumer to believe that the Products are free from Reef-Damaging Ingredients.  As this Court has acknowledged, determinations of how reasonable consumers perceive product labels and advertising rarely should be resolved on the pleadings, as matters of law. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638–39 (2d Cir. 2018).  Because the issue of consumer perception is a fact-intense issue, lower courts analyzing "reef friendly" or "reef safe" labels on products have routinely rejected defendants' motions to dismiss allegations similar to Plaintiff's.[2]  *See, e.g., Locklin v. StriVectin Operating Co.*, 2022 U.S. Dist. LEXIS 52461, at *8–10 (N.D. Cal. Mar. 23, 2022) (holding that the plaintiff plausibly alleged the "reef safe*" label to be deceptive to reasonable consumers); *Moran v. Bondi Sands (USA) Inc.*, 2022 U.S. Dist. LEXIS 79591, at *13 (N.D. Cal. Apr. 29, 2022) (same but with a "Reef Friendly" label); *White v. The Kroger Co.*, 2022 Dist. LEXIS 54273, at *4–5 (N.D. Cal. Mar. 25, 2022) (same). Here, whether the "Reef Friendly" label is materially misleading to reasonable consumers is a factual question inappropriate for resolution on a motion to dismiss.

*Second*, even if Edgewell's use of "Reef Friendly" in the Product name were ambiguous, the district court erred in determining as a matter of law that reasonable

---

[2] While the extant cases involving "reef friendly" or "reef safe" labels on sunscreens and suncare products have all been decided by California federal courts, they are instructive because they are factually similar.

consumers are unlikely to be deceived by the Products' labeling. This Court has recognized that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 637 (quoting *Williams*, F.3d at 939). It was therefore erroneous for the district court to conclude that the asterisk directing consumers to the fine print on the back label disclosing that the Products are free of oxybenzone and octinoxate, cures actionable deception created by the front label.

*Third*, the district court's improper conclusions under the reasonable consumer standard led it to likewise wrongly conclude that Edgewell's "Reef Friendly" label is not a material statement amounting to a warranty. The "Reef Friendly" label is not a generalized or vague statement, as "it cannot be said that a reasonable consumer cannot interpret" the label as a factual claim about the Products' environmental impact. *Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118, at *20 (S.D.N.Y. May 15, 2014). Nor is the warranty created by the labeling of the Products cured by the qualifying language on the back label as Plaintiff's claims are not limited to only two particular chemicals.

Thus, the district court erred in granting Edgewell's motion to dismiss and denying Plaintiff leave to amend her allegations regarding whether reasonable

consumers are deceived by Edgewell's "Reef Friendly" labeling of the Products despite their inclusion of Reef-Damaging Ingredients.

**ARGUMENT**

**I.   The District Court Erred By Dismissing Plaintiff's Claims Under The GBL §§ 349 And 350 On A Pleadings Challenge**

**A.   The District Court Erred By Holding As A Matter Of Law That Edgewell's "Reef Friendly" Label Is Unlikely To Deceive The Reasonable Consumer**

This Court has explained that the "reasonable consumer" test governs claims brought under New York GBL §§ 349, 350. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citing *Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013)). Under the reasonable consumer standard, "a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas*, 910 F.3d at 636 (quoting *Fink*, 714 F.3d at 741). Moreover, deception under the reasonable consumer standard need not be explicit or obvious. Indeed, deceptive advertisements often "intentionally use ambiguity to mislead customers while maintaining some level of deniability about the intended meaning." *Bell v. Publix Super Markets, Inc*, 982 F.3d 468, 477 (7th Cir. 2020).

A reasonable consumer is "the ordinary consumer acting under the circumstances" and "is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." 1A *Callmann on Unfair Competition,*

15

*Trademarks and Monopolies*, § 5:17, p. 5–103 (4th ed. 2004) (internal citations omitted). Consumer-protection laws do not impose on average consumers an obligation to analyze product labels as lawyers might for ambiguities, especially when purchasing an everyday, low-cost product. *See, e.g.*, *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer."). Indeed, when purchasing "everyday" items courts stress that reasonable consumers are likely to (and need only) exhibit a low degree of care. *Bell*, 982 F.3d at 479.

The "reasonable consumer" determination is one federal courts have referred to as "fact-intensive," taking into account "real market conditions and real consumers' behavior." *Id*. at 478 (analogizing consumer protection claims to Lanham Act claims). Only in "rare situation[s]" may a court determine, as a matter of law, that the alleged violations of the GBL are simply not plausible because "the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage."[3] *Budani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y.

---

[3] Second Circuit case law cautions that courts must "proceed with care" when determining as a matter of law that an allegedly deceptive advertisement would not

2021).  Indeed, "at least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled." *Id*. (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, at *62 (E.D.N.Y. Sept. 22, 2015)).

For the reasons discussed below, the district court erred by concluding that this was one of those "rare" situations warranting early dismissal of Plaintiff's claims, as a matter of law.

---

have misled a reasonable consumer.  *Budhani*, 527 F. Supp. 3d at 676.  Only scenarios in which allegations defy "ordinary common sense or the obvious nature of the product" will be properly disposed of on a demurrer or motion to dismiss. *Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1165 (2018); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, U.S. Dist. LEXIS 123824, at *54 (E.D.N.Y. Aug. 29, 2013) (for a court to grant a motion to dismiss, the label's context must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled.").  For instance, claims that sugary cereal misleadingly implied that it contained real fruit were properly dismissed as implausible.  *See e.g.*, *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114, at *8–9 (E.D. Cal. May 20, 2009) (dismissing claims based on allegations that consumers were misled to believe that "Froot Loops" cereal contained "real, nutritious Fruit"); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *11–13 (N.D. Cal. July 2, 2010) (holding as a matter of law, that no reasonable consumer would be led to believe that "Cap'n Crunch's Crunch Berries" cereal contained real fruit berries).  As "crunch berries" are not naturally occurring and obviously are not "berries," for instance, no reasonable consumer could believe otherwise.

1.     **Plaintiff Plausibly Alleged That The Products' "Reef Friendly" Label Is Likely To Mislead Reasonable Consumers**

Under New York GBL sections 349 and 350, a plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the facts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). "The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself. In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. Numerous courts, analyzing similar allegations, have determined that "Reef Friendly" or "Reef Safe" claims on sunscreens or sun care products may mislead the reasonable consumer. *See, e.g., Locklin v. StriVectin Operating Co.*, 2022 U.S. Dist. LEXIS 52461, at *8–10 (N.D. Cal. Mar. 23, 2022); *Moran v. Bondi Sands (USA) Inc.*, 2022 U.S. Dist. LEXIS 79591, at *13 (N.D. Cal. Apr. 29, 2022); *White v. The Kroger Co.*, 2022 Dist. LEXIS 54273, at *4–5 (N.D. Cal. Mar. 25, 2022).

In *Locklin*, the court held that the plaintiff plausibly alleged violations of California's false advertising and consumer protection laws against a defendant who labeled its sunscreen as "REEF SAFE*" despite containing avobenzone, homosalate, octisalate, and octocrylene. 2022 U.S. Dist. LEXIS 52461, at *6–7. The court explained how the plaintiff's complaint "tells a simple story":

> [The defendant] promises that its sunscreen is "reef safe," when it in
> fact contains chemicals that actively harm coral reefs and the marine
> life that rely on them for survival. . . . It alleges a connection between
> those chemicals and coral reefs . . . [and] further explains that some
> consumer are misled by the "reef safe" label[,]. . . . pay[ing] an inflated
> price for a product that falls short of its promises.

*Id*.

The *Locklin* court rejected the defendant's argument that the asterisk directing consumers to the back of the packaging eliminates deception by explaining that the sunscreen contains neither oxybenzone nor octinoxate, noting that "[defendant] does not have free rein to define 'reef safe' to mean anything it wants." *Id*. at *9.

The *Moran* court determined that the plaintiff's allegations that the defendant's sunscreen was falsely labeled as "Reef Friendly" was similar to *Locklin*. *Moran*, 2022 U.S. Dist. LEIS 79591, at *10–12. There, the court noted that the plaintiff had cited reports from various organizations, petitions submitted to the FDA, and legislation she claimed were sufficient to allege the chemicals contained in the products were harmful to reefs. *Id*. at *10–11. In response to the defendant's argument that the chemicals at issue were not actually dangerous, the court explained that the issue ultimately goes to whether the plaintiff "will be able to prove that her claims that the statement is false or misleading, rather than whether she had *alleged* that is the case." *Id*. at *12–13. Accordingly, the court held that the plaintiff's materials "may well be enough to prove that the ['Reef Friendly' label] is false or misleading to a reasonable consumer who cares about avoiding using products that

19

endanger the reefs." *Id*. at *12 (quoting *Locklin*, 2022 U.S. Dist. LEXIS 52461, at *11).

In *White*, the court rejected the defendant's argument that a "reef friendly" label on its sunscreen products was nonactionable puffery. 2022 U.S. Dist. 54273, at *4–5. There, the plaintiff pointed the court to the FTC's "Green Guides" which stated that "[u]nqualified general environmental benefit claims . . . likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has no negative environmental impact." *Id*. at *5 (quoting 16 C.F.R. 260.4(b)). The court noted that while the FTC guides do not create a private cause of action, it does "undermine any argument that 'reef friendly' can be dismissed as mere puffery." *White*, 2022 U.S. Dist. LEXIS 54273, at *6.

This Court should reach the same conclusion as the factually comparable *Locklin*, *Moran*, and *White* courts. Like in *Locklin*, Plaintiff has adequately alleged that: (1) Edgewell markets its Products as "Reef Friendly" when in fact, the Products contain Reef-Damaging Ingredients (A033–36, ¶ 36 ("In spite of the Products' labeling, they contain Reef-Damaging Ingredients, including avobenzone, homosalate, octisalate, and octocrylene")); (2) there is a direct connection between the chemicals in the Products and the harm suffered by coral reefs and the marine life that inhabits them (A26, ¶ 19 ("Avobenzone, homosalate, octisalate and octocrylene . . . are chemicals that are well documents as being harmful to reefs,

including coral reefs and the marine life that inhabit and depend on them.")); and (3) that consumers rely on the "Reef Friendly" label when making their purchase decision, ultimately paying a price premium for Products they believe have a positive ecological impact. A20–21, ¶ 9 ("In making the purchase, the ["Reef Friendly" claim] led Plaintiff to believe that the Product's ingredients were all reef-friendly and otherwise could not harm reefs . . . Plaintiff would not have purchased the Product had she known that the [claim] was false"); A36–37, ¶ 37 ("manufacturers, such as Defendant, 'greenwash' their Products by labeling them with environmentally and eco-friendly claims, such as ['Reef Friendly'], to charge consumers a premium for reef-friendly products").

Like *Moran* and *White*, Plaintiff's FAC cites reports from various organizations, petitions submitted to the FDA, and legislation demonstrating the harmful effects of the chemicals found in Edgewell's Products. A29–30, ¶¶ 24–26; A32, ¶¶ 30–31 (noting that the Haereticus Environmental Laboratory, the National Ocean Service, the Hawaii Center for Biological Diversity, the EWG, and the Koahala Center all caution consumers against using products containing Reef-Damaging Ingredients); A30, ¶ 27 (citing to FDA petition to remove from sale all sunscreens that contain octocrylene); A31, ¶¶ 28–29 (citing the Hawaii Legislature and other countries' bans on the use of oxybenzone, octinoxate, and octocrylene in sunscreens and sun care products). Plaintiff also cites to the FTC Green Guides to

demonstrate how "reasonable consumers are likely to interpret eco-friendly and similar environmental claims to mean that the products pose no risk to the environment, including animals." A26, ¶ 18(c).

Thus, like in *Locklin*, *Moran*, and *White*, Plaintiff's materials "may well be enough to prove that the ['Reef Friendly' label] is false or misleading . . . ." *Locklin*, 2022 U.S. Dist. LEXIS 52461, at *11. This Court should hold the same and prevent Edgewell from "hav[ing] free rein to define ['Reef Friendly'] to mean anything it wants." *Id.* at *9.

### 2. "Greenwashing" Practices Demonstrate The Materiality Of Environmental Claims To Reasonable Consumers

Consumers often support environmentally or socially responsible business practices through their purchasing decisions. *See Ass'n of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 732-734 (9th Cir. 1994) (evaluating statutory ban on deceptive environmental marketing claims, finding "green marketing boosts consumer demand" and "ecologically-minded consumers are increasingly willing to pay for" environmentally conservative products); Miriam A. Cherry, *The Law and Economics of Corporate Social Responsibility and Greenwashing*, 14 U.C. Davis Bus. L.J. 281, 282-288 (2014) (describing origin and increasing prevalence of corporate "greenwashing"—false advertising of corporate environmental and social responsibility—to take advantage of increasing consumer demand for such activities and thereby increase corporate profits). However, as Plaintiff alleged, manufacturers

such as Edgewell, "greenwash" their Products by labeling them with environmentally and eco-friendly claims (such as the "Reef Friendly" label), thereby defrauding consumers into buying the Products at a price premium even though the Products do not conform to the label and instead contain the Reef-Damaging Ingredients that harm reefs, including coral reefs and the marine life that inhabits and depends on them. *See* A36–37, ¶ 37.

Thus, "greenwashing" deceives consumers with false or misleading claims about products' environmental benefits. This marketing tactic is used to give the impression that a product is more eco-friendly than it is, leading consumers to believe that they are making a sustainable choice when they purchase it. However, the reality is that greenwashing is a form of deception that can undermine efforts to promote genuine environmental sustainability, as consumers may be less likely to scrutinize a product's environmental impact if they believe it has already been vetted.

Consumers find "eco-friendly" labels on products to be material to their purchase decisions because they want to make choices that align with their values and beliefs. Many consumers are willing to pay more for products that are environmentally sustainable or otherwise not harmful to the planet. Eco-friendly labels are one way companies provide a way for consumers to easily identify products that meet their standards and allow them to feel good about their purchases.

In addition, eco-friendly labels can provide information about a product's environmental impact that consumers may not be able to discern from other sources. An "eco-friendly" label is material to consumers' purchase decisions because it can affect the consumer's willingness to pay a premium for a product.

Moreover, as companies like Edgewell know, marketing space on product labels is limited and valuable. A37–39, ¶ 43 (marketers "reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products"). Indeed, "[t]he marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset v. Sup. Ct.*, 51 Cal.4th 310, 328 (2011). If "Reef Friendly" were truly irrelevant, Edgewell would not have wasted prime marketing real estate on such a claim. Where, as here, "a reasonable inference exists that consumers may be looking for sunscreen products that are not damaging to reefs . . . 'reef friendly' may reasonably be understood as implying defendants' products meet those criteria." *White*, 2022 U.S. Dist. LEXIS 54273, at *5–6.

Thus, Plaintiff's allegations that Edgewell's "Reef Friendly" label was material to consumers' purchase decision are sufficient to state a claim under the GBL sections 349 and 350.

### 3. Even If The "Reef Friendly" Label Were Ambiguous, The District Court Should Not Have Decided Its Meaning As A Matter Of Law

In a consumer protection case like this one, where the Plaintiff proffered reasonable interpretations of a potentially ambiguous product label, the district court should have allowed a jury (or at least a summary judgment motion) to decide whether the labeling was in fact deceptive. *See, e.g., Cooper v. Anheuser-Busch, LLC,* 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) ("at the motion-to-dismiss stage, [w]here a representation is capable of two possible reasonable interpretations, the Court is not free to reject the misleading one…simply because there is an alternative, non-misleading representation") (internal quotes omitted); *Mantikas*, 910 F.3d at 638-39 (2d Cir. 2018) (reversing dismissal on pleadings where "Whole Grain" cracker label could be reasonably read as promising either predominantly whole grain, or just some whole grain); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019) (reversing dismissal on pleadings where label was ambiguous: "None of this is to say that our dissenting colleague's reading is by any means unreasonable . . . . That being said, we think it best that six jurors, rather than three judges, decide."). This Court in *Mantikas* also noted that a rule immunizing any ambiguous label as long as it was susceptible of at least one non-deceptive interpretation "would validate highly deceptive advertising." 910 F.3d at 638.

25

In one recent decision, a sister Court of Appeal reversed dismissal of state consumer protection claims[4] based on labels advertising "100% Grated Parmesan Cheese" despite containing other, non-cheese ingredients.  The district court had granted dismissal because any ambiguity based on the front of the label's "100%" claim could have been dispelled by the ingredient list on the rear of the package. *Bell*, 982 F.3d at 475.  The Court of Appeals explained that "100% Grated Parmesan Cheese" might be interpreted as "100% of the contents is grated," or that whatever cheese it contains is "100% parmesan," or that "100%" applies to all three words. *Id.* at 476, 477.  Reversing, the court concluded that the ultimate question—"how consumers actually understand defendant's labels"—cannot be answered as a matter of law and the plaintiffs were entitled to present evidence of how consumers actually understand the labels.  *Id.* at 480.  *Bell*'s careful reasoning further supports the conclusion that Edgewell's "Reef Friendly" label, if ambiguous, should be subjected to evidentiary proof regarding how consumers actually understand it, in context.

Also instructive is this Court's decision in *Mantikas,* where the plaintiff sued the defendant under the New York GBL for false advertising after plaintiff paid a price premium for Cheez-Its crackers labeled as "WHOLE GRAIN" that were primarily made of enriched white flour.  910 F.3d at 635. The plaintiff argued that

---

[4] *Bell* involved numerous states' consumer protection laws, including New York's, and expressly applied the reasonable consumer standard.  982 F.3d at 474, n.1.

"WHOLE GRAIN" and "Made With WHOLE GRAIN" ordinarily communicated that "the grain in the product is predominantly, if not entirely, *whole* grain" rather than that the crackers in fact contained whole grain. *Id*. at 636–37. The district court granted the defendant's motion to dismiss, and the plaintiff appealed. *Id*. at 636.

This Court held that the complaint had adequately alleged why the term "WHOLE GRAIN" could plausibly deceive reasonable consumers. *Id*. at 637. First, this Court noted that the plaintiff only needed to plead enough facts to plausibly demonstrate that a reasonable consumer may be misled. *Id.* at 363. Second, this Court held that the plaintiff met this burden with multiple allegations that the "challenged advertisement as a whole" was deceptive. *Id.* at 636–37. To the extent that the "WHOLE GRAIN" statement had multiple possible interpretations, this Court concluded that a rule immunizing any ambiguous label as long as it was susceptible of at least one non-deceptive interpretation "would validate highly deceptive advertising." *Id*. at 639

Like the plaintiff in *Mantikas*, Plaintiff here met her burden of showing a reasonable consumer could be misled to believe the "Reef Friendly" Products did not contain Reef-Damaging Ingredients that could damage coral reefs and the marine life that inhibit them. Plaintiff supported the definitions of "Friendly" and "Eco-Friendly" with multiple allegations in the FAC, including dictionary definitions. A26, ¶ 18(a)–(b). Edgwell's ability to identify one potential non-deceptive

27

interpretation – that "Reef Friendly" means the Product does not contain two specific Reef-Damaging Ingredients – does not immunize it from deceptive marketing claims. Just as this Court reversed an improper dismissal of adequately alleged consumer protection claims in *Mantikas*, the Court should do so here.

Courts within this Circuit routinely find allegations of deceptive product names plausible under New York's consumer protection statutes, even if ambiguous. *See, e.g.*, *Rivera v. S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 813759, at *11 (S.D.N.Y. Sept. 24, 2021) (noting that "poisonous" or "capable of causing death or serious debilitation . . . . may well be the most common understanding of the word toxic. But it is not the only one."); *Kacocha v. Nestle Purina Petcare Co.*, 2016 U.S. Dist. LEXIS 109097, at *57–58 (S.DN.Y. Aug. 11, 2016) (denying motion to dismiss claims that references to "Bacon" on dog treat packaging would mislead a reasonable consumer, insofar as it implied bacon was the predominate ingredient, despite Nestle Purina's argument that the product did in fact contain *some* bacon); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, 2015 WL 5579872, at *14-21 (E.D.N.Y. Sept. 22, 2015) (same for "Total 0%" language on yogurt's label, which was meant to show that yogurt was non-fat, but reasonable consumer could be misled to think "Total 0%" referenced ingredients other than fat content, *e.g.*, calories, carbohydrates, or sugar).

The district court's conclusion that "[t]he representation 'Reef Friendly*' does not unambiguously convey that the sunscreen products do not convey *any* ingredients that could be harmful to coral reefs" was erroneous. A115. This improper determination allowed the district court to narrowly define the statement to limited chemicals when in fact, there are other chemicals which can have devastatingly harmful effects on coral reefs. Plaintiff's interpretation of "Reef Friendly" does not depend on which combination of specific Reef-Damaging Ingredients are included. Plaintiff's claims are that, in context, "Reef Friendly" is used to refer to the positive ecological impact of the sun care Products, implying the absence of *any* Reef-Damaging Ingredients that damage coral reefs and the marine life that inhabit them. Plaintiffs further rely on the standard dictionary definitions of the adjectives "Friendly," which include "not causing or likely to cause harm"[5] and "Eco-Friendly", which include "not environmentally harmful."[6]

In any event, extinguishing Plaintiff's claims on the pleadings simply because one possible reading of "Reef Friendly" is simply as excluding oxybenzone and

---

[5] Friendly Definition, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/friendly (last accessed April 14, 2023). For example, "environmentally friendly packaging = packaging that does not damage the environment." *Id*. (brackets omitted).

[6] Eco-Friendly Definition, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/eco-friendly (last accessed April 14, 2023). The FTC finds that the term "eco-friendly" is synonymous with the term "environmentally friendly," in that it has no harmful impact on the environment or animals. 16 C.F.R. § 260.4.

octinoxate[7] substantially undermines New York's consumer protection laws. *Mantikas*, 910 F.3d at 639 (noting that a rule immunizing any ambiguous label as long as it was susceptible of at least one non-deceptive interpretation "would validate highly deceptive advertising.").

Despite the other reasonable (if not substantially more likely) interpretations of the "Reef Friendly" label, the district court zeroed in on only oxybenzone and octinoxate, to the exclusion of all other Reef-Damaging Ingredients. This was erroneous in the context of a consumer protection case predicated on deceptive labeling. As this Court has noted, "[i]t is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992).

## B. The Back Label Of The Product Does Not Cure The Deception Presented On The Product's Front "Reef Friendly" Packaging

This Court has recognized that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). "Instead, reasonable consumers expect that the ingredient list

---

[7] Indeed, this interpretation of "REEF SAFE*" has been rejected by other courts as "absurd" and akin to labeling a product as "SAFE* FOR HUMAN CONSUMPTION" on the front, with a caveat on the back stating that it "contains no cyanide." *Locklin,* 2022 U.S. Dist. LEXIS 52461, at *8–9.

contains more detailed information about the product that *confirms* other representations on the packaging." *Mantikas*, 910 F.3d at 637 (quoting *Williams*, 552 F.3d at 939–40)). In *Mantikas*, this Court concluded "that a reasonable consumer should not be expected to consult . . . the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637.

The district court erred in concluding that "[a] reasonable consumer would read the phrases 'Reef Friendly*' and '*No Oxybenzone or Octinoxate' to mean that the Products are reef friendly because they do not contain any Oxybenzone or Octinoxate." A116. In addition to making an improper factual determination, the district court's reliance on *Turk v. Rubbermaid Inc.*, 2022 U.S. Dist. LEXIS 50230, at *20 (S.D.N.Y. Mar. 21, 2022) as a justification for concluding that the back label disclaimer could dispel consumer confusion was misplaced. A116.

The *Turk* court held that a reasonable consumer could not be deceived by a statement on the label of a cooler that it will retain ice for "5 days" because any possible deception is dispelled by an accompanying asterisk directing consumers to another statement "'which qualifies the '5 day' claim by indicating this was at 90 degrees Fahrenheit and 'under test conditions'". *Id.* In reaching this conclusion, the court relied on *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, 2019 U.S. Dist. LEXIS 125971, at *7–8 (E.D.N.Y. July 16, 2019) for the proposition that other

31

portions of a challenged product's label can dispel consumer confusion when they clarify an ambiguous label, defeating claims under the New York GBL. *Turk*, 2022 U.S. Dist. LEXIS 50230, at *19. The *Turk* court also relied on *Garadi v. Mars Wrigley Confectionary US, LLC*, 2021 U.S. Dist. LEXIS 128814, at *6 (E.D.N.Y. July 6, 2021) for the proposition that "'determining the likelihood that reasonable consumers would be misled entails viewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of the product as a whole.'" *Turk*, 2022 U.S. Dist. 50230, at *19–20 (internal citations omitted).

However, other courts within this circuit have refused to follow *Reyes*' holding that other potions of a product's label can dispel consumer confusion. *See Troncoso v. TGI Friday's, Inc.*, 2020 U.S. Dist. LEXIS 100695, at *22 (S.D.N.Y. June 8, 2020) ("The Court does not find *Reyes* to be instructive.") In *Troncoso*, the Southern District of New York noted that *Reyes* is only applicable under comparable circumstances where other statements on the packaging would clearly dispel the challenged representation. *Id.* For example, *Reyes* did not apply where the defendant's "Potato Skins" representation on the front of the snack chips' packaging would lead a reasonable consumer to believe the product contained potato peels, and that impression was not clearly dispelled by a list of ingredients stating the product contained potato starch and potato flakes. *Id.* Like in *Troncoso,* the disclaimer that the Products do not contain two specific Reef-Damaging Ingredients does not clearly

dispel consumer confusion as to whether the Products contain *any* Reef-Damaging Ingredients.

Nor is *Garadi* comparable to the instant case. There, the plaintiffs alleged that the "vanilla" descriptor on an ice cream label implied the product was "100% flavored from vanilla beans." 2021 U.S. Dist. LEXIS 128814, at *8. In viewing the "vanilla" descriptor in light of its context on the label in connection with the marketing of the product as a whole, the court concluded that "nowhere on the packaging does defendant promise that the ice cream bars are flavored with vanilla from an exclusive source." *Id*. Rather, reasonable consumers were likely to view the statement as indicated that the flavor of the ice cream bars was primarily vanilla. *Id*. Importantly, in reaching this conclusion, the *Garadi* court did not rely on a back-label disclaimer. *Id.*

The district court's reliance on *Turk* is thus misplaced, as Edgwell's product as a whole is not comparable to the products in the cases the district court relied on. Rather, Edgewell's qualifying language that the Products exclude oxybenzone and octinoate does *not* clearly dispel the reasonable impression that "Reef Friendly" means that the Products do not contain *any* Reef-Damaging Ingredients. *See Locklin,* 2022 U.S. Dist. LEXIS 52461, at *8–9 ("[I]magine a product labeled 'SAFE FOR HUMAN CONSUMPTION' on the front, with a caveat on the back stating that it 'contains no cyanide.' If the label contained a lethal dose of ricin, the label would

obviously mislead. [Defendant] does not have free rein to define 'reef safe' to mean anything it wants.")  The district court erred in improperly determining as a matter of law how reasonable consumers would interpret the "Reef Friendly" label, with or without the qualifying language.

In *Locklin*, the court held that the asterisk on a "REEF SAFE* SUNSCREEN" label directing consumers to the back of the package, which explained that the product excluded oxybenzone and octinoxate did not dispel consumer deception. 2022 U.S. Dist. LEXIS 52461, at *8–9.  The court rejected the defendant's argument that "even if the four chemicals identified by Locklin do harm the reefs, the lawsuit must be dismissed because the fine print defines 'reef safe' narrowly to mean 'does not contain two particular chemicals that harm coral reefs,'" noting that such an argument "is absurd." *Id*. at *8.  While acknowledging that analyzing the reasonable consumer standard may involve considering contextual inferences to the packaging of a product, the court ultimately concluded that "a company can't say something misleading on the front of a label and escape liability by stating 'that's not actually what we mean' in fine print on the back." *Id*. at *8–9.

One federal district court within this Circuit explains why evaluating qualifying language on a product label is inappropriate at the motion to dismiss stage.  In *Gonzalez v. Costco Wholesale Corp.*, 2018 U.S. Dist. LEXIS 171000, at *28–30 (E.D.N.Y. Sept. 29, 2018), the plaintiff alleged violations of the New York

GBL against a defendant who labeled its cleaning products as "environmentally responsible" despite containing unnatural and toxic chemical ingredients. *Id*. at *2–3. There, the products' packaging included additional information stating that the products were designed in accordance with "safer chemistry" guided by the EPA, in conformance with the OECD biodegradable standards and in accordance with other "biobased" standards. *Id*. at *29.

Despite this qualifying language that accompanied the challenged representation on the products' packaging, the court concluded that what reasonable consumers may conclude about the products when viewing both sets of statements was not a determination appropriate at the motion to dismiss stage. *Id*. (concluding that "whether the second set of statements undermine Plaintiff's claim that a reasonable consumer would not expect 'environmentally responsible' products to contain the allegedly toxic ingredients" is an issue of fact). The court held that the plaintiff's challenge to the "Environmentally Responsible" label "is not easily discarded" by the qualifying language appearing elsewhere on the products' packaging. *Id*. at *30 ("[I]t is unclear what conclusions a reasonable consumer would draw when considering the two sets of statements on the Products.").

This case is analogous to *Locklin*. Just as allegations regarding the product name that included the qualifying language that the products contained neither oxybenzone nor octinoxate were sufficient to survive a motion to dismiss, the

Products' "Reef Friendly" label, even if qualified by an asterisk leading to language noting the absence of oxybenzone and octinoxate, should not have been rejected as a matter of law.

Accordingly, this Court should adopt the logic set forth in *Mantikas, Locklin,* and *Gonzalez* and hold that any qualifying language on the back of the Products does not, as a matter of law, dispel the deception created by the front "Reef Friendly" label.

## II. The District Court Erred By Dismissing Plaintiff's Claim For Breach Of Warranty

Although the district court correctly concluded that Plaintiff timely provided Edgewell with pre-suit notice, it fell short with its erroneous conclusion that "the Products do not make an express warranty that they only contain ingredients that do not cause harm to coral reefs." A117. The district court's improper conclusions under the reasonable consumer standard surrounding the misleading nature of the "Reef Friendly" label led it to likewise wrongly conclude that the label statement was not a material statement amounting to a warranty. A117. Contrary to the district court's holding, Edgewell's "Reef Friendly" label that is prominently featured on the Products is neither a generalized or vague statement, nor is it cured by the qualifying language on the back of the Products.

## A.    The "Reef Friendly" Representation Is Neither A Generalized Nor A Vague Statement

District courts within this Circuit routinely hold that allegations sufficient to plead deception under consumer protection statutes are likewise sufficient to plead breach of warranty.  *See, e.g., Cooper*, 553 F. Supp. 3d at 111 (finding allegations that plausibly plead under New York's consumer protection statutes that the defendant's "distilled" liquor/wine product label is false and can reasonably mislead consumers are therefore likewise sufficient to support plaintiff's breach of warranty claims); *Singleton v. Fifth Generation, Inc.*, 2016 U.S. Dist. LEXIS 14000, at *38 (N.D.N.Y. Jan. 12, 2016) (holding allegations that defendant's "handmade" liquor product reasonably misleads consumers were sufficient to state a claim under New York's consumer protection statutes and, thus, sufficient to state a claim for breach of express warranty as well); *Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118, at *20 (S.D.N.Y. May 15, 2014) (plaintiff's breach of warranty claim, based on defendant's "all natural" label, turned on "what a reasonable consumer's interpretation might be," and "is a matter of fact . . . not appropriate for decision on a motion to dismiss").

In *Ault*, the court found the defendant's "All Natural" label to constitute an actionable warranty.  2014 U.S. Dist. LEXIS 67118, at *20 (citing New York Uniform Commercial Code Law § 2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the

37

basis of the bargain creates an express warranty.")).  There, the court concluded that the "All Natural" label was not a generalized statement by the defendant because "it cannot be said that a reasonable consumer cannot interpret 'All Natural' as a factual claim about Crisco Oil."  *Ault*, 2014 U.S. Dist. LEXIS 67118, at *20.

The district court's reliance on *Baretto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021) was misplaced.  A118.  The *Baretto* court's conclusion that a "Vanilla Soymilk" label was a nonactionable warranty because it did not state that the product was made exclusively with natural vanilla is not comparable to Edgewell's "Reef Friendly" label.  *Id.* at 806.  Unlike a "Vanilla Soymilk" label that communicates nothing regarding whether the vanilla included is natural or not, the term "Reef Friendly" has been widely used to indicate the absence of Reef-Damaging Ingredients that have hazardous effects on coral reefs.  *See* A26, ¶ 18 (providing dictionary definitions and FTC guidance on "Reef Friendly").

Rather, the factually analogous *Moran* decision provides more relevant guidance.  There, the court denied the defendant's motion to dismiss the plaintiff's breach of warranty claim, basing its decision on its conclusion that the plaintiff had plausibly alleged a "Reef Friendly" label as deceptive to the reasonable consumer. 2022 U.S. Dist. LEXIS 79591, at *13.  Much like the "Reef Friendly" label in *Moran*, this Court should hold that the district court erred in concluding that Edgewell's "Reef Friendly" label was a "generalized statement" that could not form

an actionable warranty. A118. Whether the "Reef Friendly" label, without more, is perceived as a vague or generalized statement is a question of fact not to be decided at the motion to dismiss stage. *See Ault*, 2014 U.S. Dist. LEXIS 67118, at *20.

Accordingly, this Court should hold that the district court erred in wrongfully determining as a matter of law that a reasonable consumer could not be deceived by Edgewell's "Reef Friendly" label and apply that conclusion in reversing the district court's decision regarding Plaintiff's breach of express warranty claim.

**B.     The Products' Back Label Does Not Conform To The Warranty Created By Edgewell's "Reef Friendly" Front Label**

The second part of the district court's analysis regarding Plaintiff's breach of express warranty claim considered Edgewell's "Reef Friendly" label with the qualifying language on the back label of the Products. A118. The district court concluded that the qualifying language created a warranty "that the Products do not contain any Oxybenzone or Octinoxate." A118. However, for the same reasons the district court's conclusions that the "Reef Friendly" label on its own does not amount to a warranty was erroneous, its conclusion regarding the back label language is similarly ignorant of the express promise made by the "Reef Friendly" label on the front of the Products.

The district court's narrowed focus on only Oxybenzone and Octinoxate misses the mark. While the court was correct that "Plaintiff does not allege that the Products contain any Oxybenzone or Octinoxate," Plaintiff *does* allege that the

Products contain other Reef-Damaging Ingredients that pose significant ecological risks to coral reefs and the marine life that inhabit them. A118; A33–36, ¶ 36 (alleging that the Products contain avobenzone, homosalate, octisalate, and octocrylene). As discussed above, the district court's reliance on the Products' asterisk directing consumers to the back label which explain that the Products are free of oxybenzone and octinoxate was improper. *See supra*, section I.C (citing *Locklin*, 2022 U.S. Dist. LEXIS 52461, at *8–9; *Gonzalez*, 2018 U.S. Dist. LEXIS 171000, at *28–30).

The district court's conclusion allowed it to "define[] '[R]eef [Friendly]' narrowly to mean 'does not contain two particular chemicals that harm coral reefs.'" *Locklin*, 2022 U.S. Dist. LEXIS 52491, at *8. Plaintiff's allegations surrounding Edgewell's "Reef Friendly" label are not limited to oxybenzone and octinoxate. This Court should hold that the district court may not limit Plaintiff's allegations to only two particular chemicals and narrowly define Edgewell's marketing and advertising of its Products. Accordingly, this Court should reverse.

CONCLUSION

The district court misapplied controlling law and substituted its own intuitions regarding Edgewell's packaging, improperly finding it to be "not materially misleading" as a matter of law. This inherently fact-sensitive inquiry should have been deferred to the finder of fact, as this case is not even close to falling within the

bounds of the "rare" consumer protection case appropriate for resolution on a motion to dismiss. With fine print label statements that fail to clarify, as a matter of law, that the Products contain hazardous chemicals other than oxybenzone and octinoxate, it is counter-intuitive and incorrect for the district court to have concluded that "no reasonable consumer could have been misled." Plaintiff's plausible allegations are sufficient to state claims for violations of GBL §§ 349, 350, and for beach of express warranty. This Court should reverse and remand the action.

Respectfully submitted,

Dated: April 24, 2023     By: */s/ Glenn A Danas*
    Glenn A. Danas
    gdanas@clarksonlawfirm.com
    **CLARKSON LAW FIRM, P.C.**
    22525 Pacific Coast Highway
    Malibu, CA 90265
    Tel: (213) 788-4050
    Fax: (213) 788-4070

    Neal J. Deckant
    ndeckant@bursor.com
    Brittany S. Scott
    bscott@bursor.com
    **BURSOR & FISHER, P.A.**
    1990 N. California Blvd., Ste. 940
    Walnut Creek, CA 94596
    Tel: (925) 300-4455
    Fax: (925) 407-2700

    Timothy J. Peter
    tpeter@faruqilaw.com
    **FARUQI & FARUQI, LLP**

41

tpeter@faruqilaw.com
1617 JFK Blvd., Ste. 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Fax: (215) 277-5771

*Attorneys for Plaintiff-Appellant Sherise
Richardson*

## Certificate of Compliance

1.  This brief complies with the type-volume limitation of Cir. R. 32(a)(4)(A) because it contains 9,373 words, excluding the parts of the brief exempted by Fed. R. App. P 32(f).

2.  This brief complies with the typeface and type-size requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in proportionally-spaced typeface using Microsoft Word, in 14–point size.

Dated: April 24, 2023

By: */s/ Glenn A Danas*
Glenn A. Danas
gdanas@clarksonlawfirm.com
**Clarkson Law Firm, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

Neal J. Deckant
ndeckant@bursor.com
Brittany S. Scott
bscott@bursor.com
**BURSOR & FISHER, P.A.**
1990 N. California Blvd., Ste. 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

Timothy J. Peter
tpeter@faruqilaw.com
**FARUQI & FARUQI, LLP**
1617 JFK Blvd., Ste. 1550
Philadelphia, PA 19103

Tel: (215) 277-5770
Fax: (215) 277-5771

*Attorneys for Plaintiff-Appellant Sherise Richardson*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2023, I electronically filed the foregoing with the Clerk and the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 24, 2023        By: *s/ Glenn A Danas*
                                    Glenn A. Danas